United States
Department of
Agriculture

**USDA**

Food and
Nutrition
Service

Retailer Policy and
Management
Division

Administrative
Review Branch

3101 Park Center
Drive, 4th Floor
Alexandria, VA
22302

Phone:
(978) 314-0046

Fax:
(844) 629-1722

MaryKate.
Karagiorgos
@fns.usda.gov

April 2, 2019

Malek Mohamed, Owner
Green Apple Grocery and Deli
2526 Washington Blvd
Baltimore, MD 21230-1407

Re:     Case #C0211630

Dear Owner:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service, in response to your request for administrative review postmarked September 14, 2018. Included is also a statement regarding relevant rights to a judicial review.

It is the decision of the USDA that there is sufficient evidence to support a finding that a permanent disqualification from participating as an authorized retailer in the Supplemental Nutrition Assistance Program was properly imposed against Green Apple Grocery and Deli by the Retailer Operations Division.

Sincerely,

*Mary Kate Karagiorgos*

Mary Kate Karagiorgos
Administrative Review Officer

Enclosure – Final Agency Decision

U.S. Department of Agriculture
Food and Nutrition Service
Administrative Review Branch
Alexandria, VA  22302

Green Apple Grocery and Deli,

Appellant,

v.

Retailer Operations Division,

Respondent.

Case Number: C0211630

## FINAL AGENCY DECISION

It is the decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS) that there is sufficient evidence to support a finding that the permanent disqualification of Green Apple Grocery and Deli (Green Apple Grocery and Deli or Appellant) from participation as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP), as initially imposed by the Retailer Operations Division, was appropriate.

### ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with 7 CFR § 278.6(a), (c) and (e)(1) in its administration of the SNAP, when it assessed a permanent disqualification against Appellant.

### AUTHORITY

7 USC § 2021 and the implementing regulations at 7 CFR § 279.1 provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may file a written request for review of the administrative action with FNS."

### CASE CHRONOLOGY

In a letter dated August 29, 2018, the Retailer Operations Division charged Appellant with trafficking, as defined in Section 271.2 of the SNAP regulations, based on a series of irregular SNAP transaction patterns that occurred during the months of January 2018 through June 2018. The letter noted that the penalty for trafficking is permanent disqualification as provided by

1

7 CFR § 278.6(e)(1). The letter also noted that Appellant could request a trafficking civil money penalty (CMP) in lieu of a permanent disqualification within ten days of receipt under the conditions specified in 7 CFR § 278.6(i).

Appellant did not reply to the charges. After considering the evidence, the Retailer Operations Division issued a determination letter dated September 12, 2019. The determination letter informed Appellant that it was permanently disqualified from the SNAP in accordance with 7 CFR § 278.6(c) and § 278.6(e)(1). The determination letter also stated that Appellant was not eligible for a trafficking CMP because Appellant failed to submit sufficient evidence to demonstrate that the firm had established and implemented an effective compliance policy and program to prevent violations of the SNAP.

In a letter postmarked September 14, 2018, ownership appealed the Retailer Operations Division's determination and requested an administrative review. The appeal was granted.

## STANDARD OF REVIEW

In appeals of adverse actions, the Appellant bears the burden of proving by a clear preponderance of the evidence, that the administrative actions should be reversed. That means the Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW

The controlling statute in this matter is contained in the Food and Nutrition Act of 2008, as amended, 7 USC § 2021 and § 278 of Title 7 of the Code of Federal Regulations (CFR). Part 278.6(a), (c) and (e)(1) establish the authority upon which a permanent disqualification may be imposed against a retail food store or wholesale food concern in the event that personnel of the firm have engaged in trafficking SNAP benefits.

7 CFR § 271.2 states, in part, that, "Eligible foods means: Any food or food product intended for human consumption except alcoholic beverages, tobacco and hot food and hot food products prepared for immediate consumption."

7 CFR § 271.2 defines trafficking as: "(1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone; . . . ."

7 CFR § 278.6(a) states, inter alia, that "FNS may disqualify any authorized retail food store . . . if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence

obtained through a transaction report under an *electronic benefit transfer system*, . . ." (emphasis added)

7 CFR § 278.6(b)(2)(ii) states, inter alia: "Firms that request consideration of a civil money penalty in lieu of a permanent disqualification for trafficking shall have the opportunity to submit to FNS information and evidence . . . that establishes the firm's eligibility for a civil money penalty in lieu of a permanent disqualification in accordance with the criteria included in § 278.6(i). This information and evidence shall be submitted within 10 days, as specified in § 278.6(b)(1)."

7 CFR § 278.6(e)(1) reads, in part, "FNS shall disqualify a firm permanently if personnel of the firm have trafficked as defined in § 271.2."

7 CFR § 278.6(i) states, inter alia: "FNS may impose a civil money penalty in lieu of a permanent disqualification for trafficking . . . if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program."

## SUMMARY OF THE CHARGES

Appellant was charged and determined to be trafficking based on an analysis of EBT transaction data from January 2018 through June 2018. This involved the following SNAP transaction patterns which are indicative of trafficking:

- There were multiple transactions made from individual benefit accounts in unusually short time frames.
- There were excessively large purchase transactions made from recipient accounts.

The issue in this review is whether, through a preponderance of evidence, it is more likely true than not true that the questionable transactions were the result of trafficking.

## APPELLANT'S CONTENTIONS

In its appeal request postmarked September 14, 2018, Appellant provided an affidavit of Malek Mohamed that provided the following summarized contentions, in relevant part:

- The transactions were for goods sold in the ordinary course of business.
- Appellant sells milk, formula, various produce, cereal, and a variety of frozen items.
- Appellant has sales promotions on goods and therefore the sales are unusual in small amounts.
- Numerous customers purchase goods that are part of a sales promotion.
- Appellant has not trafficked.
- There is no reason to traffic because Appellant has consistent sales and the alleged trafficking amount of $14,349.55 is immaterial to the total cost of goods.
- Appellant requests that trafficking charge be dismissed.

3

Appellant submitted invoices of its food products purchased as well as 13 customer statements in support of its contentions.

The preceding may represent only a brief summary of the Appellant's contentions presented in this matter. However, in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced.

## ANALYSIS AND FINDINGS

### Store Visit

FNS authorized Green Apple Grocery and Deli as convenience store on June 17, 2013. The case file indicates that in reaching a disqualification determination, the Retailer Operations Division considered information obtained during a June 18, 2018, store visit conducted by a FNS contractor to observe the nature and scope of the firm's operation, stock, and facilities. This information was then used to ascertain if there were justifiable explanations for the firm's irregular SNAP transactions. The store visit report and photographs documented the following store size, description, and characteristics:

- Green Apple Grocery and Deli is approximately 1200 square feet.
- There were two shopping baskets and no shopping carts for customer use.
- There was one cash register and one point-of-sale device.
- The available checkout area space was limited and surrounded by a plastic barrier with checkout occurring through a small window.
- There were no meat/seafood specials or bundles that might sell for high prices.
- There was no fresh meat, poultry, or fish.
- There was no fresh produce.
- The only dairy available was milk.
- Other staple food items included eggs, juice, cereal, rice, and a selection of canned goods.
- Much of the remaining stock consisted of accessory foods such as candy, spices, and carbonated and uncarbonated drinks.
- Ineligible items included tobacco, paper products, cleaning products, and health and beauty items.

The SNAP eligible food stocked by the store was generally of a low dollar value consisting mainly of inexpensive canned and packaged goods, snack foods, single-serving food items and accessory food items. In fact, there were no items priced greater than $5.00. Given the available inventory as noted above, there is no indication from the store visit report that the store would be likely to have SNAP redemption patterns significantly different from similar-sized competitors.

### Charge Letter Attachments

Each attachment furnished with the charge letter represents the questionable and unusual patterns of SNAP transactions indicative of trafficking which were conducted at the Appellant firm

during the review period. As there is more than one pattern of irregular transactions, the case of trafficking becomes more convincing.

**Charge Letter Attachment 1. Multiple transactions were made from individual benefit accounts in unusually short time frames.** This attachment documents 21 sets of transactions, conducted by 12 different households, that total $2,123.39 in SNAP benefits. Multiple transactions conducted by the same household account within a short period of time is a method which violating stores use to avoid single high dollar transactions that cannot be supported by a retailer's inventory and structure.

The SNAP transactions noted in the charge letter are questionable not because they exceed any limits for use, but rather because they display characteristics of use inconsistent with the nature and extent of Appellant's stock and facilities and are therefore indicative of trafficking. Although it is not uncommon for customers to have more than one transaction per day, it is not common that such multiple transactions are for large dollar amounts. The photographs from the store visit offer no explanation as to why SNAP customers would routinely shop at Appellant multiple times during a short period or purchase such a large volume of items, there being no great variety of products, price advantage, profusion of large packages, or significant bulk items for sale. In addition, checkout occurred through a small window. The second and subsequent transactions are too large to consist of a forgotten item or two.

In the absence of any other reasonable explanation, the irregular transaction patterns are more likely than not to be a result of trafficking in SNAP benefits.

**Charge Letter Attachment 2: Excessively large purchase transactions were made from recipient accounts.** This attachment lists 312 SNAP transactions as large as $74.50 that total $14,349.55 in SNAP benefits. These large transaction amounts are not consistent with the store's inventory with no fresh meat and no fresh produce. As noted earlier, there is no evidence that the firm would be likely to have SNAP redemption patterns that differ significantly from nearby, similar-sized competitors, especially considering that there were no items priced for more than $5.00. Therefore, the substantial number of high dollar purchases calls into question the legitimacy of these transactions.

Appellant contends that it sells milk products, formula, various produce, cereal and variety of frozen food products. On the day of the store visit, Appellant only had milk in the dairy staple food category and did not meet even meet SNAP authorization criteria. A retailer is required to have at least three stocking units of three different varieties of each staple food category. Appellant had a limited stock of staple food on the day of the store visit. There was no evidence that Appellant sold formula, frozen items, or produce on the day of the store visit. Appellant submitted invoices for review. The invoices do not show that Appellant purchased infant formula or produce. It appears that the only frozen items purchased were ice cream. The invoices are predominantly snack food items and beverages.

Appellant also explains that it has sales promotions. However, there was no evidence submitted by Appellant nor visible on the day of the store visit of any sales promotions.

The Retailer Operations Division compared Appellant to two nearby similarly or better stocked convenience stores. During the review period, Appellant's average SNAP transaction amount was two times greater than the other two stores. Appellant does not appear to stock any high dollar or specialty food items that could account for such differences. The Retailer Operations Division also determined that the transaction pattern of Appellant exceeded the other two authorized stores, as seen on the table. The Retailer Operations Division considered this an indicator of trafficking.

| Store | Attachment 1 Pattern | Attachment 2 Pattern |
|---|---|---|
| Appellant | 21 | 312 |
| Store #1 | 0 | 7 |
| Store #2 | 0 | 8 |

The Retailer Operations Division compared Appellant to the average for convenience stores in the State. Appellant's average SNAP transaction amount was 40% greater than the average for convenience stores in Baltimore City County. In addition, Appellant conducted more transactions in each ten dollar range between $30.00 - $69.99 than the average for convenience stores in the State. There were unusual spikes in the $40.00 - $49.99 range. Appellant conducted 135 SNAP transaction in the ten dollar range where the average for convenience stores was 24.27. . The Retailer Operations Division considered this an indicator of trafficking considering Appellant's eligible food stock, infrastructure, and proximity to larger, better stocked stores this.

The Retailer Operations Division determined that there are 16 SNAP authorized stores within a one-mile radius of Appellant, including 12 other convenience stores, three small groceries, and one supermarket. Therefore, it would be highly unlikely that SNAP recipients would regularly purchase large amounts of merchandise at Appellant when larger, better stocked stores are readily available and in the vicinity of the Appellant firm.

Lastly, the Retailer Operations Division examined five households identified in the charge letter to analyze their shopping patterns at Green Apple Grocery and Deli compared to their shopping patterns at other SNAP authorized stores. All of these households had access to, and shopped at supermarkets and super stores. However, despite this access to better stocked stores, each of the five households conducted excessively large transactions at Green Apple Grocery and Deli within 24 hours of shopping at a supermarket or super store. It is unlikely that these households would conduct large transactions at Appellant when these households had just visited or planned to visit larger stores with a better selection of staple foods including fresh meat and produce and likely better prices.

In summary, Appellant's layout, business structure, and food inventory do not support a high percentage of transactions markedly exceeding the average SNAP transaction amount of similar type stores. In addition to the irregularity of such high dollar transactions in comparison to similar stores, the limited availability of counter space for checking out and the lack of shopping carts and baskets support the Retailer Operations Division determination. It is not plausible that the store's customers are carrying large amounts of food around the store without the benefit of shopping carts and only a limited amount of shopping baskets.

Based on a preponderance of the evidence, the irregular transaction patterns cited in Charge Letter Attachment 2 are more likely than not the result of trafficking in SNAP benefits.

**Invoices**

Appellant submitted invoices to document it inventory to support the high SNAP redemption amounts. The Retailer Operations Division analyzed the invoices. Invoices dated outside of the review period were excluded. Considering a 40% mark-up and that 20% of sales were from cash or credit, the Retailer Operations Division determined that Appellant did have sufficient food purchases to justify its total monthly SNAP redemptions. However, even if the invoices did show that the store purchased sufficient food inventory to account for the firm's SNAP redemption volume, sufficient inventory alone does not explain the suspicious patterns of SNAP transactions such as rapid and consecutive transactions by individuals during the same store visit or in a single day. Even the large dollar transactions would remain questionable if there were sufficient food inventory to support such transactions when consideration is made of there being very little counter space to place food for purchase at the checkout counter, checkout occurred through a small window, and the store primarily purchased snack foods and beverages.

**Customer Statements**

Appellant submitted 13 statements from SNAP recipients that allege to regularly shop at Appellant and state that they did not commit trafficking and would like Appellant to be reinstated. The transaction history of each of these households was looked up in the State system. Four of the households could not be located. One household did not conduct any transactions at Appellant during the review period. Three households conducted transactions at Appellant during the review period but none of the transactions were listed on the Charge Letter Attachments. There were five households that conducted 39 of the transactions. The Retailer Operations Division determined that the majority of the firm's questionable transactions remain unexplained.

**No Incentive to Traffick**

Appellant states that the alleged trafficking amount is immaterial to its total cost of goods sold and therefore there is no incentive to be involved in trafficking. However, to state that only a small percentage of transactions are irregular or abnormal does not explain the irregular transactions. It is not unusual for a store to have largely legitimate SNAP transactions while conducting a small number of trafficking violations with a few trusted households. Yet, in this case, the Retailer Operations Division determined that the dollar volume cited in Attachment 2 is more than 50% of the stores total dollar volume for the review period. Thus, it hardly seems "immaterial." In the absence of a credible explanation for the irregular transaction patterns, the most likely explanation is that they are a result of the store trafficking in SNAP benefits.

**Evidence**

The ALERT system is a computerized fraud detection tool to identify SNAP transactions that form patterns having characteristics indicative of trafficking. The charge letter attachments are

7

derived from transaction reports from this system. However, this tool does not by itself determine or conclude that trafficking has occurred. The Retailer Operations Division must still conduct an extensive analysis of the transaction data and patterns, often with other factors such as, in this case, observations from store visits, an analysis of customer shopping behavior and a comparison of stores in the area, and render a determination whether the questionable transactions were, more likely than not, the result of trafficking. Lastly, Appellant is always given a chance to explain the specific transaction patterns before the determination letter is issued and during the administrative review.

The legality of this method is supported by 7 CFR §278.6(a) which states, inter alia, "FNS may disqualify any authorized retail food store . . . if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, **evidence obtained through a transaction report under an electronic benefit transfer system** . . . ." [Emphasis added.]

Appellant must provide a preponderance of evidence that the transactions detailed in the charge letter were more likely than not due to the legitimate sale of eligible food in exchange for SNAP benefits. In the absence of compelling information or documentation weighed in comparison to the evidence provided by the Retailer Operations Division, the evidence weighs in favor of the Retailer Operations Division's determination that SNAP-benefit trafficking substantially produced the transaction activity at issue in the present case.

## CIVIL MONEY PENALTY

In the charge letter, the Retailer Operations Division informed Appellant of its right to request a trafficking CMP under 7 CFR § 278.6(i). Appellant was informed that it would need to provide both the request and supporting evidence within ten calendar days of receiving the charge letter and that no extension of time could be granted for making the request or for providing the required evidence. Appellant did not request consideration for a trafficking CMP in lieu of a permanent disqualification under 7 CFR § 278.6(i), even though it was informed of the right to do so in the charge letter.

Even if a timely request had been submitted, Appellant would likely not have been eligible for a trafficking CMP in lieu of disqualification because there is insufficient evidence to demonstrate that the firm had established and implemented an effective compliance policy to prevent SNAP violations. Therefore, the Retailer Operations Division's decision not to impose a trafficking CMP in lieu of disqualification is sustained as appropriate pursuant to 7 CFR § 278.6(i).

## CONCLUSION

The Retailer Operations Division's analysis of Appellant's EBT transaction record was the primary basis for its determination to permanently disqualify Appellant. This data provided substantial evidence that the questionable transactions during the review period had characteristics that are consistent with trafficking violations in SNAP benefits. Therefore, based on a review of all of the evidence in this case, it is more likely true than not true that program

violations did occur as charged by the Retailer Operations Division. The determination to impose a permanent disqualification against Appellant is sustained.

The Retailer Operations Division also determined that Appellant was not eligible for a trafficking civil money penalty according to the terms of 7 CFR Section 278.6(i) of the SNAP regulations. Under review, the denial of a trafficking CMP was deemed correct and proper.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 USC § 2023 and 7 CFR § 279.7. If a judicial review is desired, the Complaint, naming the United States as the defendant, must be filed in the U.S. District Court for the district in which the Appellant's owner resides or is engaged in business, or in any court of record of the State having competent jurisdiction. If any Complaint is filed, it must be filed within thirty (30) days of receipt of this Decision.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

MARY KATE KARAGIORGOS  
Administrative Review Officer

April 2, 2019

9