IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

| | |
|---|---|
| **GREEN APPLE GROCERY AND DELI, LLC, ET AL**<br><br>**PLAINTIFFS**<br><br>V.<br><br>**UNITED STATES DEPARTMENT OF AGRICULTURE; C/O SONNY PERDUE**, *in his official capacity as Secretary of the United States Department of Agriculture*<br><br>**DEFENDANT** | Civil Case No.:1:19-cv-01408-RDB |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

NOW COMES, Green Apple Grocery and Deli, LLC ("Green Apple") and Malek Mohamed (hereinafter referred as the "Plaintiffs "), by and through their undersigned counsel, and hereby files their Memorandum of Law in Opposition to the Defendant, United States Department of Agriculture's Motion to Dismiss or In the Alternative for Summary Judgment, and for reasons state:

## I.   FACTUAL HISTORY

The Supplemental Nutrition Assistance Program (SNAP) is the nation's largest domestic food assistance program, serving over 42.1 million recipients in an average month at a federal cost of over $68 billion in FY2017. SNAP is jointly administered by state agencies, which handle most recipient functions, and the federal government—specifically, the U.S. Department of Agriculture's Food and Nutrition Service (USDA-FNS)—which supports and oversees the states

1

and handles most retailer functions. SNAP, formerly known as the "Food Stamp Program," is responsible for providing monetary benefits to poor families for the sole purpose of permitting them to purchase food. 7 U.S.C. §2011. It is codified at 7 U.S.C. §§2011-2036(c). The United States Department of Agriculture is tasked with overseeing the program, which in pertinent part, involves the authorization and reauthorization of food retailers to sell food to the SNAP participants.

This action originates as a result of an April 2, 2019, Final Agency Decision ("FAD") of the United States Department of Agriculture's decision affirming a Permanent Disqualification upon Plaintiffs' from participation as an authorized retailer in SNAP rendered by FNS Retailers Operation Division based on alleged violations of 7 U.S.C. §2021 and 7 CFR 271.2. (AR. 977 through AR. 986). Plaintiffs are seeking *de novo* review of this decision, as there is no reasonable articulable dispute that the Complaint, at least, at the pleading's stages, alleges a cause of action for judicial review of the FAD.

Moreover, this Court is not bound to the Administrative Record in this case, nor is the administrative record immune from the rules of evidence. It is important to note that discovery, which is afforded under the rules, has not commenced, nor has any depositions been conducted. Furthermore, Plaintiffs did not have an opportunity to review the Administrative Record prior to the filing of the instant Motion, nor has the government witnesses ever been cross examined respecting their analysis of this case.

## II.  STANDARD OF REVIEW

a. Motion to Dismiss

Dismissal under Rule 12 is "merely a decision on the pleadings. For that reason, such motions are granted sparingly and with caution." See *Hospital Bldg. Co. v. Trustees of Rex Hosp*.,

511 F.2d 678, 680 (4th Cir. 1975) rev'd on other grounds, 425 U.S. 738, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (U.S.N.C. 1976). "Dismissal under Rule 12(b)(6) is appropriate only if a plaintiff fails to state a claim that is plausible on its face." *Owens v. Baltimore City State's Attorney's Office*, 767 F. 3d 379, 396 (4th Cir. 2014). In ruling on a 12(b)(6) motion to dismiss, this Court must "accept the well-played allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff ." *Ibarra v. United States*, 120 F. 3d 472, 474 (4th Cir. 1997). Consequently, a motion to dismiss may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 450-46 (1957); See also *Flood v. New Hanover County*, 125 F. 3d 249, 251 (4th Cir. 1997) (citing *Estate Constr. Co. v. Miller & Smith Holding Co.*, 14 F. 3d 213, 217-18 (4th Cir. 1994))( "to dismiss a complaint pursuant to Rule 12(b)(6), the court must consider the well-pleaded material allegations in the light most favorable to the Plaintiff and accept those factual allegations as true.") Furthermore, the court must "disregard the contrary allegations of the opposing party." *Gillespie v. Dimension Health Corp.*, 396 F. Supp 2d 636, 640 (D. Md. 2005).

      As stated above, a motion to dismiss for failure to state a claim for relief should not be granted if the complaint is plausible on its face. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has 'facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678. Thus, it is incumbent on the defendants to prove that plaintiff's complaint does not allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 681; See also *Bing v. General Motors Acceptance Corp.,* 237 F. Supp. 911, 912 (E.S.S.C. 1965) (quoting

*Conley v. Gibson*, 355 U.S. 41, 45 (1957)) ("A complaint should not be dismissed…unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") By rule, in order to maintain the motion as a motion to dismiss, the defendant must prove these elements without presenting evidence extrinsic to the plaintiff's complaint. Fed. R. Cic. Pro. 12(d). Extrinsic evidence is not germaine to the Court's analysis because "[t]he issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 524 U.S. 506, 511 (2002).

### III.   ARGUMENT

**a) Plaintiff Has Stated A Claim Upon Which Relief Could Be Granted**

The crux of the Defendant's argument is that Plaintiffs Amended Complaint fails to state a claim upon which relief could be granted. Defendant further alleges that the Amended Complaint sets forth incorrect statements of law and conclusory allegations that are not entitled to a presumption of truth. The Plaintiff believes and avers that there are sufficient allegations in the Amended Complaint to state a claim and notes that this is an appeal from an administrative agency which places an extreme burden on the Plaintiff, regardless of the Defendant not providing specific information needed to be able for Plaintiff to formulate a defense to these proceedings.

Plaintiff contends that the administrative action of the Defendant was arbitrary and capricious. First, for example, Plaintiff notes that in the Final Agency Decision, Administrative Review Officer Mary Kate Karagiorgos ("ARO") advised that Plaintiff provided an Affidavit, receipts (AR 550 though AR 1326) and affidavits of customers in support that they had not engaged in trafficking. It is evident that the ARO chose to disregard the evidence provided by the Plaintiffs.

The action of the Defendant in upholding permanent disqualification was arbitrary and capricious as the ARO arbitrarily discounts the otherwise permissible and instructive factors, which although not mandatory, are six possible categories of documentation which Plaintiff may provide in support of its claim for imposition of a lesser sanction. In addition, the ARO did not provide Plaintiffs with the names of the customers who they were allegedly charged with trafficking, nor did they conduct any interviews, telephonically or in person, of the twelve (12) customers with whom they allege were the recipients of the trafficking. As SNAP recipients, customers have an obligation to cooperate with the Defendant and its agents, thus, conducting a comprehensive investigation to determine if the suspected trafficking actually occurred would have served the ends of justice, and was essential and necessary to ensure that Plaintiffs due process rights were not violated. Instead, the ARO relies solely upon the confusing and speculative data in support of her decision to adjudge the Plaintiffs guilty of trafficking and subsequently issuing a permanent disqualification. The ARO attempts to justify its decision by relying upon the "absence of reasonable explanation" as opposed to relying upon the inclusion of documentation and evidence which would support that Plaintiffs had sufficient food items in stock to cover all charges. (See AR. 550 through AR. 1326; AR. 507).

The Defendant argument that the customer charges were excessively high, amounts to nothing more the purposeful hyperbole and abstruse reasoning. The charges were issued based on a purported pattern, instead of actual evidence. (AR. 516 though AR. 527). The FAD goes onto describe that the Plaintiffs lacked a stocking unit of three different varies of each staple of food categories. This is patently incorrect, as the record reflects that the Plaintiffs has sufficient number of food items stocked (AR 550 through AR 1326)[1]. Moreover, even *assuming arguendo* that the

---

[1] Plaintiffs obtains its food inventory items from B. Green Wholesaler in Baltimore. According to its website, B. Green was established in 1915, offers various services for our members including delivery. B Green Wholesale provides

Plaintiffs did not have sufficient food, which it did, it should not have been flagged suspicious, especially in light of the Defendant's own guidelines which indicates non-food items are at the tip of the list with respect to sales across all markets. Specifically, in the Defendant's November 2016, Nutrition Assistance Program Report entitled "**Foods Typically Purchased By Supplemental Nutrition Assistance Program (SNAP) Households Appendices**"[2], they rank food items by categories. Specifically, they found that **[Soft Drinks]** was the number one item purchased using the SNAP program. *See Exhibit A,* Appendix *A-1*. According to the Defendant, customers, like the ones Plaintiffs is being accused of trafficking, spent $357,000,000 (three hundred fifty-seven million dollars) in soft drinks alone. Using the Defendant's own data, if a customer were to come in and purchase ten (10) two litter sodas at $3.00 each, then purchased a gallon of milk at $3.00, 2 loafs of bread for $1.99 each and 4 waters at $1.50 each, for a total order of $42.98, that transaction would run afoul of SNAP regulations, despite, no statutory basis preventing such a sale. This is why a thorough investigation should have been conducted because the data that the Defendant has provided is not reliable without additional testing. As is evident by the record, Plaintiffs carries significant bulk items, which, will permit the customer to have a variety of items to choose from (AR. 550 -AR.1326).

The Defendant has pointed to no SNAP regulation, or statutory authority, that prevents a consumer from purchasing large quantities of approved items. *In fact*, most SNAP recipients have multiple children, and may not have transportation to go to a supermarket, hence, the need for Convenience Stores in low-income communities. Further, the Defendant has cited to not one case

---

quality products at low prices and carries many of your favorite brands. They sell a broad selection of products for grocery stores, corner stores, gas stations, concessions stand, offices, liquor stores, restaurants and more. See https://www.bgreenco.net/about/
[2] See https://www.fns.usda.gov/snap/foods-typically-purchased-supplemental-nutrition-assistance-program-snap-households

6

or provided any legal authority to suggest that a business owner, like the Plaintiffs, is prohibited from selling approved SNAP items in more than one quantity, even in bulk, yet it seeks to sanction Plaintiffs', without any evidence, whatsoever of them violating the regulations. The decision was arbitrary, capricious and a violation of Plaintiffs substantive due process rights under the fifth amendment.

A Review of the facts in a light most favorable to the Plaintiffs, this court must find that at the pleading stages, Plaintiffs have alleged sufficient facts to show that their disqualification from the SNAP program was lacking in due process, and that their disqualification and subsequent review is appropriate.

### b) Plaintiffs Request Leave To Amend Their Complaint To Cure Any Alleged Deficiency Less Justice Triumph.

Should the court find that Plaintiffs Amended Complaint is deficient in anyway, Plaintiffs seek leave of the Court to Amend the Complaint, to correct same. It is axiomatic that a motion for permission to amend the complaint is governed by Rule 15(a), which directs the Court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has stated that leave to amend under Rule 15(a) should be denied only in three situations: when the opposing party would be prejudiced, when the amendment is sought in bad faith, or when the proposed amendment would be futile. Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006).

This Court have stated in a situation where defendants are aware of the circumstances giving rise to the action, no prejudice can be claimed." *Matrix Capital Management Fund, LP v. BearingPoint, Inc.,* 576 F.3d 172, 195 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir.1999) (noting that merely adding specificity to allegations generally does not cause prejudice to the opposing party); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.1980) ( "Because defendant was from the outset made fully aware of the events giving rise to

the action, an allowance of the amendment could not in any way prejudice the preparation of defendant's case.").

The interests of justice and judicial economy will undoubtedly be served by having all allegations properly before the Court. The amendments would be narrowly tailored to reflect the present circumstances and Plaintiff's present understanding of the case. In so doing, the action can more effectively proceed on the merits.

### c) The Defendant's Motion for Summary Judgment Should Be Denied Or In The Alternative Stayed As Premature To Permit Plaintiff Meaningful Discovery

In the alternative, the Defendant's has requested that this court should rule on the merits of the complaint, based on an inaccurate record, without affording Plaintiffs discovery. At the outset, a judgment under the Federal Rules of Civil Procedure Rule 56 may be entered only [where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits], if any show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

The Court's role under Rule 56 is limited to assessing the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *Anderson Liberty v. Lobby, Inc.*, 477 U.S. 242, 249 (1986). In the context of this evaluation, the evidence of the non-moving party is to be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. See, *Hunt v. Cromartie*, 526 U.S. 541, 550-55 (1999); see also *Anderson Liberty*, 477 U.S. at 255. See also *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). "Summary Judgment

will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson Liberty*, 477 U.S. at 248.

Plaintiff has not had an opportunity to conduct meaningful discovery to test the evidence in order to meet his burden in this case. Consequently, A Rule 56(d) affidavit is attached hereto as Exhibit B. Summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E. I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d at 448. To raise adequately the issue that discovery is needed prior to summary judgment, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without needed discovery. Fed. R. Civ. P. 56(d).

Discovery is necessary in this matter for the reasons set forth therein, and hereunder, but has not occurred. With no discovery having been conducted, it's hard to imagine how the Plaintiffs could reasonably be expected to compile and submit evidence. Plaintiffs need discovery on the following topics:

a) All data, records, computer programs, algorithms, comparables, memoranda, pictures, and investigative reports utilized or relied upon by the Defendant in disqualifying the Plaintiffs from participating as a retail food store in the Supplemental Nutrition Assistance Program. As of this writing, Plaintiffs have never before been provided all the information upon which the original decision to disqualify them was made. The Plaintiffs cannot rebut the Defendant's evidence without this information.

b) All household data for any and all persons or participants that are listed in the Attachments to the Charging Letter, or the timeframe listed in the Charging Letter and encompassing the

Attachments thereto. As of this writing, Plaintiffs have never before been provided this information, and is unable to rebut the Defendant's evidence.

c)  All transaction data for any store that the Plaintiff's store was compared to for purposes of determining what transactions should be included in the Attachments to the Charging Letter. Plaintiffs expert would be required to conduct a data analysis to complete a comparison of "baseline" stores in order to determine whether or not the Plaintiffs were in fact operating outside normal range of transactions for similarly situated businesses. While summaries and bar graphs were selected for inclusion by the Defendant in is Administrative Record, the raw data was excluded.

d)  Any and all investigative reports pertaining to the Plaintiff and relating to the transactions set forth in the Charging Letter, to include, but not be limited to pictures, affidavits, notes, memoranda and communication. This information is very important to Plaintiffs defense as it seeks to identify any other investigations that the Department conducted into the Plaintiffs' operations which may also show a pattern of regulatory compliance.

e)  Any and all statistical case studies upon which the Defendant based its finding of trafficking in the instant matter. The Defendant contends in the Administrative Review that the two ALERT patterns utilized by the Defendant in this matter are correlated to trafficking in SNAP benefits as a result of a Department data analysis. If the Defendant has a study/analysis that correlated the two, it would be a direct contradiction of what the Defendant has previously testified to.

f)  Any and all investigative case studies upon which the Defendant based its finding of trafficking in the instant matter. The Defendant contends in the Administrative Review that the two ALERT patterns utilized by the Defendant in this matter are correlated to trafficking in SNAP

benefits as a result of a Department data analysis. If the Defendant has a study/analysis that correlated the two, it would be a direct contradiction of what the Defendant has previously testified to.

g) Any and all statistical case studies showing a link between "trafficking" as defined by the regulations in 7 C.F.R. §271.2 and "multiple transactions [that] were made from individual benefit accounts in unusually short time frames." The Defendant contends in the Administrative Review that the two ALERT patterns utilized by the Defendant in this matter are correlated to trafficking in SNAP benefits as a result of a Department data analysis. If the Defendant has a study/analysis that correlated the two, it would be a direct contradiction of what the Defendant has previously testified to.

h) Any and all statistical case studies showing a link between "trafficking" as defined by the regulations in 7 C.F.R. §271.2 and "excessively large purchase transactions made from recipient accounts. As previously noted, which bears repeating, Plaintiffs' have never before received all the information upon which the original decision to disqualify them was based. The Plaintiffs cannot fully rebut the Defendant's evidence without this information.

i) Any and all statistical case studies showing a link between "trafficking" as defined by the regulations in 7 C.F.R. §271.2 and "the majority or all of individual recipient benefits were exhausted in unusually short periods of time." As previously noted, which bears repeating, Plaintiffs' have never before received all the information upon which the original decision to disqualify them was based. The Plaintiffs cannot fully rebut the Defendant's evidence without this information.

j) Any and all internal memoranda, processes, guidelines, guidebooks, or other such documentation upon which the Defendant's Analysts and Section Chiefs are to rely in evaluating

charges of trafficking, sale of ineligible items, and issuance of credit in ALERT data based cases. As previously noted, which bears repeating, Plaintiffs' have never before received all the information upon which the original decision to disqualify them was based. The Plaintiffs cannot fully rebut the Defendant's evidence without this information.

    k)  Any and all training materials and documentation used for new employees in the position of USDA FNS Retailer Operation Division Analyst. As previously noted, which bears repeating, Plaintiffs' have never before received all the information upon which the original decision to disqualify them was based. The Plaintiffs cannot fully rebut the Defendant's evidence without this information.

    l)  A copy of the FNS Standard Operating Procedures. As previously noted, which bears repeating, Plaintiffs' have never before received all the information upon which the original decision to disqualify them was based. The Plaintiffs cannot fully rebut the Defendant's evidence without this information.

    m)  Any and all store evaluations, inspections, investigations, Retailer Investigation Branch reports, ALERT reports, ALERT data, and STARS data for any and all retailers to which the Plaintiff was compared. The data requested in this section includes information from January 2016-until the present date. As previously noted, which bears repeating, Plaintiffs' have never before received all the information upon which the original decision to disqualify them was based. The Plaintiffs cannot fully rebut the Defendant's evidence without this information. These documents will be helpful in ensuring that no relevant information or documentation relied on by the Defendants are discovered.

    n)  Any and all reports, statistical analyses, memoranda and the like pertaining to the shopping habits of typical SNAP participant households which are the product of the Defendant's studies

since 2008. Plaintiffs', upon information and belief, believes that additional studies were performed in 2016-2018; thus, this information is relevant to Plaintiffs being able to meet its burden in this case.

o) Any and all documentary evidence upon which the Defendant intends to rely to support its case that the Plaintiff was trafficking in SNAP benefits. This category is a general request for any other documents which the Defendant's may contend support their position and will be utilized herein.

p) All curriculum vitae of any expert that the Defendant intends to list as a witness at trial.

q) Specific personal identifying information, including name, address, phone number, and EBT card number is known by state agencies that issue EBT cards to SNAP beneficiaries. This information will be helpful in identifying the customers that the Defendants are stating received cash, in lieu, of food. This information is germane to Plaintiffs being able to meet their proof.

Furthermore, Plaintiffs also seeks to serve written discovery on the Defendant, to take the deposition, pursuant to Fed. R. Civ. P. 30(b)(6), of the FNS designee(s) with knowledge regarding its "Ineligible Firms" regulation, and to take the deposition of the FNS Administrative Review Officer ("ARO") who issued the FAD. In addition, Plaintiff will seek to depose the ALERT System Administrator. This limited discovery is likely to uncover FNS's issuance, guidance, communications, and other records relating to FNS's "Ineligible Firms" regulation, including how, if at all, FNS interpreted the term "home consumption." It is also likely to confirm that the Defendant has not reasonable evidence to support its charges that the Plaintiffs were trafficking food stamps.

Additional depositions may be necessary for yet-to-be-identified SNAP participants to ascertain why they made the purchase that they did in the timeframe in which they were made. To

date, all evidence pertaining to household preferences has been generic and limited to the personal knowledge of the Plaintiffs. The aforementioned discovery is germane to this case, and to Plaintiffs ability to meet his burden herein.

Plaintiffs are entitled to *de novo* review, See 7 U.S.C. § 2023(a)(15). The issue before this Court is not whether the Defendant "fully considered" the Plaintiffs' evidence, or whether the Defendant merely made "an error," or even whether the Defendant acted with evidentiary support when it "ultimately rejected" the Plaintiffs' evidence in favor of its own preferred conclusions. Rather, the Court must ultimately decide if trafficking actually occurred.

The purported evidence submitted by the Defendant's has not been subjected to testing, though, discovery, depositions and cross examination. In support of its Motion for Summary Judgment, the Defendant's relies on cases which suggest that this court should grant its motion without permitting discovery. Plaintiff Mohamed categorically denies that he has engaged in trafficking. *See Exhibit C*, and his customers have likewise affirmed that the store has not engaged in trafficking (AR. 928 through AR. 940). The Defendant has presented not a *scintilla* of direct evidence to demonstrate trafficking; only relying on *hypothesis, innuendos, and speculation*. Moreover, the Defendant alleges that there were multiple transactions in short periods of time. A review of the record does not support this assertion (AR. 502). Moreover, the difference between what Plaintiffs sold versus similarly situated businesses was less than $2,900; which is hardly sufficient to rise to the level of a pattern (AR. 503). It is likewise clear that the Plaintiffs business has sufficient food items in its store, and not mere snacks, as described by the Defendant. (AR. 33-AR. 46; AR. 507). For all of these reasons, Plaintiffs respectfully request that this court defer ruling on the Summary Judgment Motion until they have had sufficient time to conduct discovery.

## **REQUEST FOR HEARING**

Plaintiffs, pursuant to Local Rule 105(6), respectfully request that a hearing been scheduled at a date and time certain so that the parties may engage in oral arguments.

WHEREFORE, Plaintiffs respectfully pray that this Honorable Court deny the Defendant's Motion to Dismiss and Defer Defendant's Summary Judgment motion, thereby, permitting the Plaintiffs to conduct discovery, consistent with the Federal Rules of Civil Procedure to properly and fully respond therein.

    Respectfully Submitted,

    THE LAW OFFICES
    OF JESSIE LYONS CRAWFORD, LLC

    /s/ Jessie Lyons Crawford
    _____

    Jessie Lyons Crawford, Esquire
    Federal Bar No.: 25247
    2601 Maryland Avenue
    Baltimore, Maryland 21218
    Office: 410-662-1230
    Facsimile: 410-662-1238
    E: attorneyjlcrawford@verizon.net

    COUNSEL FOR PLAINTIFFS'